**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP (SBN 237615)
JONATHAN S. CHRISTIE (SBN 294446)
VICTOR A. SALCEDO (SBN 317910)
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone:   310.229.1000
Facsimile:   310.229.1001
gknopp@akingump.com
christiej@akingump.com
vsalcedo@akingump.com

Attorneys for Defendant,
TAPESTRY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION (RIVERSIDE)

| | |
|---|---|
| NORMA GARCIA, individually, on a representative basis, and on behalf of all others similarly situated;<br><br>         Plaintiff,<br><br>    vs.<br><br>TAPESTRY, INC., a Maryland Corporation which will do business in California as Coach Leatherware California, Inc. DBA Coach; and DOES 1 through 10, inclusive;<br><br>         Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453**<br><br>[Declarations of Jonathan Christie and Beth Stankard, Civil Cover Sheet, Notice of Interested Parties and Corporate Disclosure Statement, Notice of Pendency of Other Actions, and Certificate of Service filed concurrently]<br><br>Date Action Filed: June 13, 2018<br><br>*(Riverside County Superior Court, No. RIC 1811996)* |

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Tapestry, Inc. ("Tapestry" or "Defendant") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453.  In support thereof, Defendant states as follows:

1.    On June 13, 2018, a putative class action was commenced and is currently pending against Defendant in the Superior Court of California, County of Riverside, as Case No. RIC 1811996, entitled *Norma Garcia, Plaintiff v. Tapestry, Inc., Defendant.* *See* Declaration of Jonathan Christie in Support of Defendants' Notice of Removal ("Christie Decl.") ¶ 2.  Attached as Exhibit A to the Christie Declaration are copies of the Summons, Complaint, Civil Case Cover Sheet, and Proof of Service of Summons. *See* Christie Decl. ¶ 2, Ex. A.  Attached as Exhibit B to the Christie Declaration is a true and conformed copy of the court's Notice of Case Assignment and Case Management Conference, dated June 13, 2018, Class Action Case Management Order #1 dated June 14, 2018 (designating case as complex), and Defendant's Answer to Plaintiff's Complaint, filed in Riverside County Superior Court on July 18, 2018.  *See* Christie Decl. ¶ 3, Ex. B.  There have been no further proceedings in case number RIC 1811996, and no other pleadings have been served upon or by Defendant in this action.  *See* Christie Decl. ¶ 3.

2.    Plaintiff Norma Garcia ("Garcia") is a former Coach brand employee of Tapestry in California who alleges that Defendant failed to pay all of her minimum and overtime wages, failed to provide proper meal and rest breaks, failed to pay all wages owed upon termination, failed to provide accurate wage statements, failed to reimburse necessary business expenses, and engaged in unfair competition.  *See generally* Complaint.  She seeks to represent a class of "[a]ll current and former non-exempt employees with the titles of Associate Manager and/or Assistant Manager employed by

1

Defendants in the State of California" at any time from June 13, 2014 through the present. Complaint ¶ 28.[1]

3. The Complaint and Summons were served on June 19, 2018. *See* Christie Decl. ¶ 2. Defendant's Notice of Removal is timely because it is filed within thirty days of that service. *See* 28 U.S.C. § 1446(b).

DIVERSITY JURISDICTION UNDER THE

CLASS ACTION FAIRNESS ACT

4. Under 28 U.S.C. § 1441(a), a defendant may remove to federal district court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), this Court has original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated amount in controversy exceeds $5 million (exclusive of costs and interest). 28 U.S.C. §§ 1332(d)(2), (d)(5), and (d)(6). These requirements are satisfied here.

5. Class Action. CAFA applies to certain "class actions," which the statute defines as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute." 28 U.S.C. § 1332(d)(1)(B). Garcia expressly "brings this action on behalf of herself and all others similarly situated as a class action pursuant to [California] Code of Civil Procedure § 382." Complaint ¶ 26. Therefore, CAFA applies. *See Bodner v. Oreck Direct, LLC*, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) (CAFA applies where "Plaintiffs' complaint alleges that the action is a class

---

[1] Defendant denies Garcia's class allegations, including that she can represent the class as defined. However, for purposes of estimating the amount in controversy, the allegations of Garcia's complaint are assumed to be true. *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.") (citations omitted).

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

action, and recites the prerequisites to a class action under . . . California Code of Civil Procedure Section 382").

6.   Class Size.   The putative class exceeds 100 members.  *See* Complaint ¶ 31 ("The potential members of the Class as defined are so numerous that a joinder of all Represented Employees is impracticable."); Declaration of Beth Stankard in Support of Defendant's Notice of Removal ("Stankard Decl.") ¶ 11(b).[2]

7.   Diversity of Citizenship.   "[U]nder CAFA, complete diversity is not required; 'minimal diversity' suffices."  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).  Minimal diversity exists if any class member is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2).

8.   The putative class members include citizens of the state of California. Garcia is a citizen of the state of California.  During her employment with Tapestry, Garcia worked in California and kept a California address on file with the company, both of which demonstrate her California citizenship.  Complaint ¶¶ 2, 21; Stankard Decl. ¶ 11(a); *see Lam Research Corp. v. Deshmukh*, 157 F. App'x 26, 27 (9th Cir. 2005) (defendant who had lived and worked for plaintiff in Washington was presumptively a Washington citizen, despite his claim that he had changed his domicile from Washington to California); *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012) (residential address provided by employee to employer is prima facie evidence of state citizenship).  Further, Garcia seeks to represent a class consisting of individuals "employed by Defendants in the State of California."  Complaint ¶ 28.  By definition, the putative class includes individuals who, like Garcia, are California citizens.

9.   Tapestry is not a citizen of the state of California.  Rather, Tapestry is a citizen of Maryland and New York.  "[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its

---

[2] A defendant may make the requisite showing by setting forth facts in the notice of removal or by affidavit.  *See Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029, 1032 (N.D. Cal. 2004).

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

principal place of business." 28 U.S.C. § 1332(c)(1). Tapestry has not been incorporated in California. Rather, Tapestry is organized and incorporated under the laws of the State of Maryland. Stankard Decl. ¶ 3. Nor is California the state in which Tapestry has its principal place of business. Rather, as shown below, Tapestry's principal place of business is located in the State of New York.

10. A corporation's principal place of business is determined under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). Under this test, the principal place of business is the state where the company's officers "direct, control, and coordinate [its] activities." *Id.* A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id.* at 93. Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, where income tax returns are filed, and where day-to-day control over the company is executed. *See*, *e.g.*, *Tomblin v. XLNT Veterinary Care, Inc.*, 2010 WL 2757311, at *4 (S.D. Cal. July 12, 2010).

11. Under these standards, Tapestry's principal place of business is in New York. The executive officers of Tapestry, including the chief executive officer, president and chief administrative officer, chief financial officer, and global head of human resources, maintain their offices at Tapestry's headquarters in New York, New York. Stankard Decl. ¶ 4. From its New York headquarters, Tapestry and its Coach brand make and implement operating, distribution, financial, employee relations, marketing, development, customer care, accounting, income tax, treasury, and legal policy decisions. *Id.* ¶ 5. Further, the majority of meetings of Tapestry's Board of Directors and stockholders take place in New York, its financial records are maintained there, and its tax returns are filed from there. *Id.* ¶¶ 6.

12. Accordingly, this action is between citizens of different states—Garcia, who is a citizen of California (and seeks to represent a class including California citizens), and Defendant, which is a citizen of Maryland and New York.

4

13.    <u>Amount in Controversy.</u>  Without conceding liability for any claims alleged by Garcia or that Garcia can properly represent the putative class she defined, Defendant avers, for purposes of this Notice only, that Garcia's claims as pled place more than $5 million in controversy.  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial.  This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) (on removal, defendant does not "concede liability for the entire amount" alleged in complaint).  The Ninth Circuit has instructed that removal is proper if, from the allegations of the Complaint and the Notice of Removal, it is more likely than not that the amount in controversy exceeds $5 million.  *Rodriguez v. AT&T Mobility Servs., Inc.*, 728 F.3d 975, 981 (9th Cir. 2013) (overturning previous Ninth Circuit precedent requiring proof of amount in controversy to a "legal certainty" under some circumstances).  This standard is easily satisfied here.

14.    For her Second and Third Causes of Action, Garcia claims that Tapestry failed to provide class members with required meal and rest breaks.  *See* Complaint ¶¶ 52-74.  She seeks a premium in the amount of one hour of pay for each workday that a compliant meal period was not provided and for each workday that a compliant rest period was not provided.  *See id.* ¶¶ 62, 73.  The putative class includes at least 625 individuals who have worked for Tapestry as Associate or Assistant Managers in California since June 13, 2014.[3]  *See* Stankard Decl. ¶ 11(b).  These individuals worked more than 44,000 workweeks during this period and earned more than $21.00 per hour

---

[3] A four-year statute of limitations applies to claims brought pursuant to Section 17200 of the Business and Professions Code.  *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 898 (C.D. Cal. 2005).

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

on average.[4] *See id.* ¶¶ 11(c)-(d). Garcia alleges that she and the putative class members underwent "off-the-clock security checks of their personal belongings and pockets each time [they] left the store," and were "required to wait for another manager to be available to conduct the off-the-clock security check which resulted in significant uncompensated wait time in addition to the time it took to conduct the security checks." Complaint ¶ 4. Garcia alleges that these security checks resulted in "meal and rest breaks [that] were cut short." Complaint ¶ 5. Because Garcia alleges that security checks occurred "each time" an individual left the store, and because putative class members worked shifts of 7.5 hours on average (Stankard Decl. ¶ 11(f)), which entitled them to both a meal and rest break, her allegations suggest that a meal break and a rest break violation occurred on every shift.[5] Given that putative class members typically worked four days per week (*id.* ¶ 11(g)) and experienced a meal break and rest break violation on each shift, these claims place more than $7.3 million in controversy (44,000 workweeks × 4 shifts per week × 2 violations per shift × $21 = $7,392,000). *See Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (finding the defendants' assumption of a 100% violation rate reasonable where the plaintiff alleged that employees "were consistently required to work through their meal periods"); *Duberry v. J. Crew Grp., Inc.*, 2015 WL 4575018, at *3 (C.D. Cal. July 28, 2015) ("[C]ourts have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice (or similar language) and where the plaintiff offers no evidence rebutting this violation rate." (citing *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (Mar. 3, 2015))).

---

[4] Unless otherwise noted, Tapestry's calculations include data from the start of the relevant liability period through December 16, 2017. Including data through the present would result in a higher workweek count and increase the amount in controversy.

[5] Additionally, Garcia alleges that "[a]t all relevant times," Tapestry denied her and other putative class members meal and rest breaks by "imposing so much work" on its employees. Complaint ¶¶ 57, 69.

6

15. For her First Cause of Action, Garcia alleges that Tapestry failed to pay putative class members minimum and overtime wages for all hours worked. *See* Complaint ¶¶ 37-51. Garcia alleges that, "at all relevant times," as a result of Tapestry's "policy and practice," she and other putative class members were required to submit to "off-the-clock security checks of their personal belongings and pockets each time [they] left the store" and were "required to wait for another manager to be available to conduct the off-the-clock security check which resulted in significant uncompensated wait time in addition to the time it took to conduct the security checks." Complaint ¶¶ 4, 39-40. She further claims that putative class members who worked a "closing shift were also required to conduct an off-the-clock security procedure that required them to set the alarm and secure and lock all exterior doors which required the closing managers to walk the entire perimeter of the store" before undergoing a security check. Complaint ¶ 6. In short, Garcia alleges that putative class members worked uncompensated time on every shift. Garcia seeks unpaid minimum wages as well as liquidated damages in the same amount. *Id.* ¶ 51. If, on average, putative class members worked just 30 minutes of unpaid time per week, the total amount in controversy for the unpaid wages claims, including liquidated damages, would be more than $350,000 (44,000 workweeks × $8 minimum wage × .5 hours × 2 = $352,000).[6] *See, e.g.*, *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (one hour reasonable estimate of uncompensated time when plaintiff alleged that defendant systematically failed to compensate employees for time over eight hours); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (allegations of a "uniform policy and scheme" that resulted in violations "at all material times" supported reasonable estimate of one hour of unpaid time per week).

16. For her Fourth Cause of Action, Garcia alleges that Tapestry owes penalties for having failed to pay all wages to employees upon the end of their employment, as

---

[6] Since June 2014, California's minimum wage has always been at least $8 per hour. *See https://www.dir.ca.gov/iwc/minimumwagehistory.htm*.

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

required by Section 203 of the California Labor Code. *See* Complaint ¶¶ 75-82. Under Section 203, former employees whom an employer willfully denied wages may recover penalties in the amount of their daily rate of pay for a period of up to thirty days. *See* Cal. Lab. Code §203. Garcia alleges that "at all relevant times" Tapestry "had a planned pattern and practice" of not paying her and each member of the Waiting Time Penalty Subclass their wages due, and therefore these former employees could all be owed 30-day penalties. Complaint ¶ 80; *see Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600, at \*12 (N.D. Cal. June 14, 2013) (in estimating amount in controversy, where plaintiff alleges pervasive violations, "it is reasonable to assume that each employee leaving employment would [be owed Section 203 penalties]"); *Helm v. Alderwoods Grp., Inc.*, 2008 WL 2002511, at \*5 (N.D. Cal. May 7, 2008) (accord); *see also Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205-06 (E.D. Cal. 2008) (in estimating amount in controversy, court may assume maximum penalty consistent with plaintiff's allegations). From June 13, 2015 to the present, approximately 350 of Tapestry's Coach brand non-exempt California Associate and Assistant Managers have separated from the company. *See* Stankard Decl. ¶ 11(i). These individuals are potentially eligible to recover Section 203 penalties under Garcia's class definition.[7] These individuals typically worked shifts of at least 7.5 hours per day, and earned more than $21.00 per hour on average. *See id.* Accordingly, an average 30-day penalty would be at least $4,725 per person ($30 \times 7.5 \times \$21 = \$4,725$). Therefore, the total amount of Section 203 penalties in controversy exceeds $1.6 million based on Garcia's allegations ($4,725 $\times$ 350 = $1,653,750). *Ibarra*, 775 F.3d at 1198 (defendant is "not stipulating to damages suffered, but only estimating the damages that are in controversy").

17.    For her Fifth Cause of Action, Garcia alleges that Tapestry violated Labor Code Section 226 by providing inaccurate wage statements. Complaint ¶¶ 83-92. Section 226 provides for a penalty of $50 for the initial pay period in which a violation

---

[7] A three-year statute of limitations applies to claims brought pursuant to Section 203. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1395-96 (2010).

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

occurs and $100 per employee for each violation in a subsequent pay period. *See* Cal. Lab. Code § 226(e). From June 13, 2017 to the present, Tapestry has typically employed at least 200 Coach brand Associate and Assistant managers in California at any time.[8] Stankard Decl. ¶ 11(j). Because Tapestry pays its employees bi-weekly (*id.* ¶ 9), it issued at least 5,200 wage statements during this period (200 employees × 26 pay periods). Here, Garcia alleges that, "[a]t all relevant times," Tapestry "violate[d] Labor Code § 226(a) every pay period with respect to [putative class members]." Complaint ¶¶ 86, 88. Thus, under her theory, all wage statements were deficient. Therefore, the amount in controversy for this claim exceeds $500,000 ((200 initial violations × $50) + (5,000 subsequent violations × $100) = $510,000).

18. Garcia also seeks attorney's fees, which must be included in the amount in controversy when available by statute. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see* Complaint & Prayer for Relief. The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees" in class actions. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Therefore, these fees place an additional several million dollars in controversy, given the potential damages and penalties at issue. *See, e.g.*, *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014) (denying motion to remand where defendant showed potential damages of $4.2 million because attorney's fees of 25 percent brought the total amount in controversy to $5.3 million); *see also Deaver v. BBVA Compass Consulting & Benefits, Inc.*, 2014 WL 2199645, at *6 (N.D. Cal. May 27, 2014) (accounting for attorney's fees by adding 25 percent of potential damages to amount in controversy); *Giannini v. Nw. Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same); *Jasso*, 2012 WL 699465, at *7 (reasonable to assume attorney's fees valued at 25 percent of common fund on removal).

---

[8] A one-year statute of limitations applies to claims for penalties under Section 226(e). *See Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, at *14 (C.D. Cal. June 22, 2012).

9

DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453

19.    Accordingly, in combination, Garcia's claims for final wages, meal and rest break violations, unpaid minimum wages, inaccurate wage statements, and attorneys' fees easily place more than $5 million in controversy, without even considering Garcia's other claims for unpaid overtime wages and failure to reimburse business expenses. *See* Complaint & Prayer for Relief.  Therefore, the amount in controversy requirement is satisfied. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700-01 (9th Cir. 2007) (remand denied under preponderance of the evidence standard where defendant's conservative estimates exceeded the requisite amount); *Deehan v. Amerigas Partners, L.P.*, 2008 WL 4104475, at *1 (S.D. Cal. Sept. 2, 2008) (amount in controversy satisfied under preponderance of the evidence standard where defendant's estimated putative class size multiplied by statutory penalty for alleged violations exceeded $5 million).

20.    There are no grounds that would justify this Court in declining to exercise its jurisdiction pursuant to 28 U.S.C. § 1332(d)(3) or require it to decline to exercise jurisdiction pursuant to 28 U.S.C. § 1332(d)(4).

### VENUE

21.    The United States District Court for the Central District of California is the judicial district embracing the place where Case No. RIC 1811996 was filed by Garcia and is therefore the appropriate court for removal pursuant to 28 U.S.C. § 1441(a).

WHEREFORE, Defendant requests that the above action now pending against it in the Superior Court of California, County of Riverside, be removed to this Court.

Dated:  July 19, 2018

**AKIN GUMP STRAUSS HAUER & FELD LLP**
GREGORY W. KNOPP
JONATHAN S. CHRISTIE
VICTOR A. SALCEDO


By    */s/ Gregory W. Knopp*
Gregory W. Knopp
Attorneys for Defendant,
TAPESTRY, INC.

10
DEFENDANT'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(D), 1441, 1446, AND 1453